Karen A. BRAMAN, Appellant

v.

Tom CORBETT, Attorney General, Commonwealth of Pennsylvania, Jonelle H. Eshbach, Senior Deputy Attorney General, Commonwealth of Pennsylvania, Appellees.

Superior Court of Pennsylvania.

Argued Feb. 15, 2011.

Filed May 5, 2011.

---

Thomas A. Crawford, Jr., Pittsburgh, for appellant.

Kelly L. Nelson, Office of Attorney General, Harrisburg, for Corbett, appellee.

BEFORE: BOWES, DONOHUE, and SHOGAN, JJ.

OPINION BY BOWES, J.:

Karen A. Braman appeals from the order entered March 15, 2010 affirming the Pennsylvania Office of the Attorney General's ("Attorney General's Office") denial of Appellant's private criminal complaint. After careful review, we affirm.

The salient procedural and factual background are gleaned from the certified record and Appellant's brief. On August 22, 2008, Appellant filed a private criminal complaint against William Higgins Jr., who was the elected district attorney of Bedford County, Pennsylvania. *See* Private Criminal Complaint, 8/22/08. Appellant alleged that Mr. Higgins raped her in his office at the Bedford County Courthouse on or about July 10, 2008. *Id.* at 2–3. Since Mr. Higgins was the district attorney, his office recused itself and referred the matter to the Attorney General's Office. The Attorney General's Office then conducted an investigation into whether to approve Appellant's private criminal complaint. Appellant did not object to the Attorney General's Office's involvement at that point or contend that the Attorney General's Office should recuse itself.

Appellant specifically alleged that, on July 10, 2008, after a Republican Party committee meeting, she and Mr. Higgins proceeded back to the Bedford County Courthouse since she was interested in garnering his political support for a possible campaign for tax collector. Before agreeing to travel to his office, she and Mr. Higgins remained behind after the other meeting members left. The two traveled in separate vehicles with Mr. Higgins arriving first. Upon Appellant's arrival, Mr. Higgins instructed her to enter through a side entranceway where no cameras were present. Appellant cannot remember the events that occurred next, although she recalled being asked by Mr. Higgins if she could get pregnant. Report of Dr. Marc Tabackman, 12/22/08, at 2. She also recounted that at some point one of her pant legs was pulled down. *Id.*

Appellant's daughter, and her boyfriend, Kevin D., along with two other individuals, witnessed Appellant and Mr. Higgins at the courthouse. They observed Mr. Higgins arrive first and he greeted the four individuals before entering the courthouse. Shortly thereafter, Appellant's daughter saw her mother driving with her cell phone in front of her, before parking her vehicle in front of Mr. Higgins's automobile, and momentarily leave. Written Statement of Appellant's daughter, 8/31/08, at 2. Appellant's daughter traveled to a local Sheetz where Kevin D. met her, but returned to the courthouse after receiving a call from the two other individuals who remained outside the courthouse, and reported that her mother returned, and entered the courthouse. *Id.*; Written Statement of Kevin D., 9/10/08, at 2; Written Statement of Lisa H., 8/31/08, at 2.

Later, Appellant's daughter observed her mother and Mr. Higgins walking together out of the courthouse to their vehicles and drive away in different directions. Written Statement of Appellant's daughter, 8/31/08, at 3. Thereafter, Appellant's daughter saw a vehicle parked on the side of Route 220 that she believed might have been her mother and she contacted Kevin D., who proceeded toward Appellant's home and passed Appellant's vehicle, which was pulled to the side of the road. *Id.*; Written Statement of Kevin D., 9/10/08, at 3. When Appellant arrived at home, her daughter saw her mother utilizing the sun visor mirror to fix her hair. Written Statement of Appellant's daughter, 8/31/08, at 4. After Appellant entered the home, she quickly went to her room upon hearing her husband approach in his work vehicle. *Id.*

When Appellant's husband arrived at home, his daughter told him that she believed her mother was having an affair. Written Statement of Appellant's husband, undated, at 1. Appellant's husband confronted Appellant and informed her that their daughter had something to tell her. *Id.* The couple's daughter told Appellant that she saw her in town and her father asked to see Appellant's cellular phone. *Id.* Appellant retrieved the cellular phone and her husband perused the telephone to determine if any text messages or calls had been placed to her. *Id.* He found a text message sent to his wife and she denied knowing the person who sent the message. *Id.* Kevin D., however, examined his own telephone and located the identical number, which belonged to Mr. Higgins. *Id.*; Written Statement of Kevin D., 9/10/08, at 4. Appellant continued to deny that she had entered the courthouse with Mr. Higgins. Written Statement of Appellant's husband, undated, at 1. Kevin D. informed Appellant's husband that two other individuals witnessed her and Mr.

Higgins enter the courthouse together. *Id.* Appellant's daughter related that her mother changed her story ten to fifteen times. Written Statement of Appellant's daughter, 8/31/08, at 4.

Appellant's husband attempted to continue to talk to his wife but she began to fall asleep or pass out due to her apparent intoxication. Written Statement of Appellant's husband, undated, at 1. At 5:30 a.m., he awoke Appellant and asked her what had transpired at the courthouse. *Id.* Appellant acknowledged having sexual intercourse with Mr. Higgins but stated that she was unable to remember all that occurred. *Id.* Appellant's husband informed his wife that she needed to tell their daughter what she had just told him. *Id.* Appellant then related the information to her daughter, who began to strike her mother, knocking her to the floor. *Id.* Appellant's husband restrained the couple's daughter and instructed his wife to leave the home, informing her that she had just thrown away twenty years of marriage. *Id.* at 1–2.

Four days later, on July 14, 2008, Appellant's husband contacted a doctor alleging that his wife was raped. The doctor advised him to have his wife undergo a rape examination at the Bedford Memorial Hospital. He then traveled with his wife to the hospital, and a nurse reported the matter to the Pennsylvania State Police. Due to the lapse of four days and Appellant having showered at least twice before arriving at the hospital, hospital personnel did not perform a rape kit. The state police also apparently informed hospital personnel that the matter should be referred to the Bedford Borough Police. Accordingly, later that day, Appellant's husband appeared at the Bedford Borough Police Station and reported that Mr. Higgins had raped his wife at the county courthouse four days earlier. The police

advised him that they would refer the matter to a different agency and contacted the Attorney General's Office. That office, however, instructed the officer to contact the state police.

The following day, Corporal Brian Hoover of the Pennsylvania State Police contacted Appellant. Appellant agreed to sign a waiver of prosecution and signed the waiver later that evening. Nevertheless, Appellant proceeded to file the instant private criminal complaint approximately one month later.

After receiving the private criminal complaint, the Attorney General's Office conducted an investigation into the allegations and notified Appellant by letter that it disapproved her case for prosecution. The Attorney General's Office explained in the letter that the disapproval was

> based on the absence of sufficient evidence to support the existence of probable cause to believe that a crime has occurred and it is also based on the improbability of obtaining a conviction in this case. We have made this determination on the basis of lack of physical evidence, the absence of a prompt complaint, the lack of credible specificity in the private criminal complaint and the significant evidence which contradicts the allegations of the complaint. Furthermore[,] the Commonwealth has an obligation to achieve justice, to responsibly use the judicial and prosecutorial process and personnel in the pursuit of a legitimate conviction and those responsibilities would not be met by the approval of charges in this case.

Attorney General's Office's Disapproval Letter, at 1.

Subsequently, Appellant filed a petition to review the Attorney General's decision pursuant to Pa.R.Crim.P. 506.[1] The judges of the Bedford County Court of Common Pleas recused themselves, and the case was assigned to Centre County Court of Common Pleas Senior Judge Charles C. Brown, Jr. Judge Brown directed the Attorney General's Office to turn over to the court a copy of its investigative file, and it complied. Thereafter, Appellant filed a motion to obtain a copy of the investigative file for herself. The trial court denied that motion. Within ten days, Appellant asked the trial court to reconsider and filed an additional document asserting that then-Attorney General Thomas Corbett and Mr. Higgins were close friends and political allies. The court scheduled oral argument, which it held on December 23, 2009. On March 15, 2010, the trial court docketed its opinion and order denying Appellant's petition to reconsider and upholding the decision of the Attorney General's Office.

Appellant timely appealed and the trial court directed that she file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant complied, and the trial court indicated that its March 15, 2010 opinion addressed Appellant's issues. The matter is now ripe for our review. Appellant raises the following issues for our consideration.

1. Was the ruling of the trial court that there was not and is not probable cause to believe that William Higgins raped the appellant as alleged

---

1. The rule provides in relevant part:
   (B) If the attorney for the Commonwealth:
   (1) approves the complaint, the attorney shall indicate this decision on the complaint form and transmit it to the issuing authority;

(2) disapproves the complaint, the attorney shall state the reasons on the complaint form and return it to the affiant. Thereafter, the affiant may petition the court of common pleas for review of the decision. Pa.R.Crim.P. 506(B).

in the petition erroneous, in light of the facts that Mr. Higgins admitted that he had sexual intercourse with the appellant and the appellant under oath stated that she did not consent to having sex with Mr. Higgins?

2. The appellant pleaded under oath that Mr. Corbett was the close personal friend and political ally of Mr. Higgins and ought not to have made any determination as to whether Mr. Higgins would be prosecuted. She offered to prove that allegation. Did the trial court erroneously deny her a hearing and the resulting subpoena power to do so?

3. Was it error for the trial court to demand that the Attorney General supply the court *ex-parte* with his investigation upon which the trial court has stated that he relied? That is, was it error for the appellant to never be served with a copy of that evidence which proved to be, at least partially responsible for the decision against her? Was the appellant's request for a copy of the Attorney General's investigation which was provided *ex parte* to the trial court erroneously denied; thus, denying the appellant the opportunity to view and rebut this evidence taken *ex-parte* and considered by the trial court from the Attorney General? Was the appellant denied the opportunity to demonstrate that the Attorney General made merely a *pro forma* or perfunctory investigation of the allegations contained in her private criminal complaint as she alleged by the trial court's refusal to provide the Attorney General's investigation to the appellant, by denying her the opportunity to prove that failure in a hearing and by refusing to require the Attorney General to prove any policy reason he had for denying to prosecute rape cases or this particular rape case?

4. If the Attorney General was relying on a policy rather than legal or factual reasons for refusing to file the appellant's private criminal complaint, did the trial court erroneously not require the Attorney General to state and prove the policy reason or reasons and erroneously denied the appellant the opportunity to question those policy reasons? If the appellant is relying upon evidentiary reasons, was their judgment and that of the trial court supported on the record?

Appellant's brief at viii-ix.

Initially, Appellant argues that the trial court erred in deciding that there was not probable cause to believe that Mr. Higgins raped Appellant since he admitted to having sexual intercourse with her and because she stated that she did not consent. According to Appellant, since the sufficiency of the complaint is a matter of law, we should review this issue *de novo*.

■ It is settled that following the receipt of a petition to review the Commonwealth's decision to disapprove a private criminal complaint, the court must determine whether the Commonwealth's rationale for disapproving the private criminal complaint is for purely legal reasons or if it is based solely or in part on policy considerations. *In re Wilson,* 879 A.2d 199 (Pa.Super.2005) *(en banc ).* When the Commonwealth's disapproval is based wholly on legal considerations, the court employs a *de novo* review. *Id.* at 215, 218. Where the decision includes or is entirely based on policy considerations, the trial court reviews the Commonwealth's determination under an abuse of discretion standard. *Id.* Instantly, the reasons for

disapproving of Appellant's private criminal complaint were not purely legal. *See id.* at 217–218 (agreeing with the trial court that a statement that the likelihood of conviction was minimal was a policy reason). Therefore, we evaluate Appellant's claims under an abuse of discretion standard.

■■■ In conducting our examination, we are mindful that the private criminal complainant must show that the decision not to prosecute was "patently discriminatory, arbitrary or pretextual, and therefore not in the public interest." *Id.* at 218. We will not disturb the trial court's ruling unless "there are no reasonable grounds for the court's decision, or the court relied on rules of law that were palpably wrong or inapplicable." *Id.* at 218–219.

In leveling her argument, Appellant submits that she became intoxicated at the Carriage House Restaurant and Mr. Higgins asked her to return to his office. Appellant avers that she was interested in obtaining Mr. Higgins's political support for her desired run as tax collector and agreed. She met Mr. Higgins at the courthouse where he instructed her to enter through a private entrance. From here, Appellant's memory is foggy. Appellant avers that she cannot recall whether she had intercourse with Mr. Higgins, but can remember that one of her pant legs was pulled down and Mr. Higgins asked her if she could become pregnant. Appellant also recalls that after leaving the courthouse, she hit something and briefly parked on the side of Route 220 before traveling home.

Appellant maintains that this information, combined with Mr. Higgins's admission that he engaged in consensual sex with her, is sufficient to support a charge of rape against Mr. Higgins pursuant to 18 Pa.C.S. § 3121(a)(3). That provision provides that a person commits rape when he engages in sexual intercourse with a person "[w]ho is unconscious or where the person knows that the complainant is unaware that the sexual intercourse is occurring." 18 Pa.C.S. § 3121(a)(3). Appellant asserts that because she was intoxicated and Mr. Higgins knew of this intoxication, when Mr. Higgins engaged in sexual intercourse with her, he had intercourse with her while she was unconscious.

The Commonwealth counters that the record conclusively demonstrates that Appellant cannot recall any specific details alleged in the complaint and is unable to state that sexual intercourse occurred. Further, the Commonwealth asserts that there is no physical evidence of an assault or sexual intercourse due to the four-day delay in reporting the matter. According to the Commonwealth, the only evidence that sexual intercourse occurred are the statements of Mr. Higgins. The Commonwealth posits that, pursuant to the *corpus delicti* rule, Mr. Higgins's statements that he engaged in sexual intercourse with Appellant would be inadmissible without independent proof of sexual intercourse. Secondarily, the Commonwealth argues that Appellant could not have been unconscious since she is able to recount some details of the interlude with Mr. Higgins, but not that sexual intercourse transpired. In addition, the Commonwealth submits that a four-day delay in this case establishes a lack of a prompt complaint, hampering its ability to sustain a conviction.

■■■ First, we dispose of the Commonwealth's position that a four-day delay in the reporting of the alleged crime and the *corpus delicti* rule would prevent a successful prosecution. While it is true that the lack of a prompt complaint is admissible in a criminal case, a four-day delay can hardly be considered egregious in light of the delays that frequently occur in other rape cases. Accordingly, the delay in this

matter does not warrant the conclusion that a conviction would be difficult to establish.

■ Additionally, the *corpus delicti* rule has no applicability where the alleged defendant does not confess. Mr. Higgins certainly did not confess to committing a crime; thus, his admission that sexual intercourse occurred would not have been inadmissible. The *corpus delicti* rule simply is not applicable herein.

■ Nonetheless, we hold that the trial court did not err in upholding the Commonwealth's decision to deny approval of Appellant's private criminal complaint. As this Court recently explained:

> Even if the facts recited in the complaint make out a *prima facie* case, the district attorney cannot blindly bring charges, particularly where an investigation may cause him to question their validity. Forcing the prosecutor to bring charges in every instance where a complaint sets out a *prima facie* case would compel the district attorney to bring cases he suspects, or has concluded *via* investigation, are meritless. The public prosecutor is duty bound to bring only those cases that are appropriate for prosecution. This duty continues throughout a criminal proceeding and obligates the district attorney to withdraw charges when he concludes, after investigation, that the prosecution lacks a legal basis.

*In re Ullman,* 995 A.2d 1207, 1213–1214 (Pa.Super.2010) (citing *In re Wilson, supra* ).

In the instant case, the Commonwealth, after investigation, exercised its discretion in declining to prosecute Appellant's complaint because it believed that it would be improbable to sustain a conviction. According to the Commonwealth, this case does not present any evidence that Appellant was unconscious or asleep during intercourse and awoke during the incident. Similarly, there was no evidence that another person observed Appellant unconscious or asleep before, during, or after the incident. The Commonwealth contrasts the evidence in this matter to other case involving the rape of an unconscious person in which the victims were asleep and awoke to a person having sexual intercourse with them or an eyewitness was able to describe the victim as totally incoherent. *See Commonwealth v. Widmer,* 560 Pa. 308, 744 A.2d 745 (2000); *Commonwealth v. Wall,* 953 A.2d 581 (Pa.Super.2008); *Commonwealth v. Erney,* 548 Pa. 467, 698 A.2d 56 (1997); *Commonwealth v. Price,* 420 Pa.Super. 256, 616 A.2d 681 (1992).

In the case *sub judice,* the Commonwealth points out that Appellant's own statements indicated that she was able to recall certain precise details immediately before and after the incident, demonstrating that it would be difficult to establish that she was unconscious or unaware of what was transpiring. Also, the circumstantial evidence from witnesses who observed Appellant prior to her leaving for the courthouse and those who saw her arrive and depart from the courthouse does not substantiate that she was not aware of what was occurring.

Appellant was unable to state that Mr. Higgins raped her or that she was asleep and awoke to find Mr. Higgins engaged in intercourse with her and told him to stop. Statements from witnesses before and after the incident indicate that, while Appellant may have been inebriated, she was conscious of her surroundings. Appellant drove herself to the courthouse prior to the incident to meet with Mr. Higgins and acknowledged kissing him in his office. Appellant also admitted to having sex with Mr. Higgins to her husband, but did not state at that time that she did not consent.

Only after Appellant's daughter physically attacked her and Appellant's husband ejected her from the marital home did she broach the subject of rape. Having carefully reviewed the record, we conclude that Appellant has not demonstrated that the decision not to prosecute was patently discriminatory, arbitrary or pretextual or that the trial court had no reasonable grounds for its decision, or erroneously applied a rule of law. The rationale expressed by the Commonwealth was an ordinary exercise of prosecutorial discretion involving an evaluation of the evidence.

Appellant's second position on appeal is that the trial court erroneously denied her a hearing and the associated subpoena power to prove that former Attorney General Thomas Corbett was the close personal friend and political ally of Mr. Higgins. Since Appellant utterly failed to object to the Attorney General's Office's exercise of jurisdiction over the matter before it investigated and decided the case, we find Appellant has waived any claim or position that the Attorney General's Office was biased and should have recused itself.

The appropriate time to assert that the Attorney General's Office was personally biased and had a conflict of interest in the matter was after the Bedford County District Attorney's Office referred the case to the Attorney General's Office. Having neglected to object at the proper time, Appellant's second issue is waived. *See e.g. Commonwealth v. Stafford,* 749 A.2d 489 (Pa.Super.2000) (a party seeking recusal of a trial judge on the basis of bias must raise the objection at the earliest opportunity).

Furthermore, a private criminal complainant is not entitled to an evidentiary hearing regarding the trial court's review of the Commonwealth's decision. *In re Wilson, supra* at 212–213. As this Court stated in *In re Wilson,* the pertinent criminal procedural rule, Pa.R.Crim.P. 506, "merely allows the private criminal complainant the opportunity to have his complaint reviewed in the Court of Common Pleas[.]" *Id.* at 213. Accordingly, Appellant's second issue fails.

The third position Appellant levels actually asserts four different questions. Nonetheless, the issues can be more succinctly phrased as a challenge to the trial court's refusal to allow Appellant to review the Attorney General's Office's investigative file. Appellant contends that this denial prevented her from proving that the Attorney General's Office conducted a perfunctory investigation. In addition, Appellant asserts that the submission of the Attorney General's Office's investigative file without permitting her to review the file was a prohibited *ex parte* communication.

Appellant asserts that the *ex parte* communication was a "gross violation of rules, ethics and justice." Appellant's brief at 23. According to Appellant, the trial court's refusal to allow her access to the file was a violation of Pa.R.Crim.P. 576,[2] Pennsylvania Rules of Professional Conduct 3.4 and 3.5 and a violation of the Code of Judicial Conduct. Appellant compares the trial court's actions to Nazi Germany and the former Soviet Union. Indeed, Appellant's argument appears to be hinged on the position that the local police force, the Pennsylvania State Police, the Attor-

---

**2.** The applicable provision reads:

    **Rule 576. Filing and Service by Parties**
    **(A) Filing**
    (1) All written motions and any written answers, and any notices or documents for

which filing is required, shall be filed with the clerk of courts.
Pa.R.Crim.P. 576(A).

ney General's Office, and a retired senior judge from a neighboring county all engaged in a conspiratorial cover-up to protect the Bedford County district attorney.

The Commonwealth replies that Appellant has no right to view its investigative file, was not entitled to rebut the contents of that file, and the file was not an impermissible *ex parte* communication. Further, the Commonwealth maintains that the trial court is permitted to evaluate all of the materials that the prosecution examined in making its determination. With respect to Appellant's position relative to Pa.R.Crim.P. 576, the Rules of Professional Conduct and the Code of Judicial Conduct, the Commonwealth contends that they did not bar the trial court's actions herein.

■■■■■ Preliminarily, Pa.R.Crim.P. 576 governs written motions, answers, and "any notices or documents for which filing is required[.]" The investigative file was neither a written motion, answer, or notice. Thus, the proper query is whether the investigative file is a document that requires filing. We hold that it does not. The comment to the applicable rule provides that

> The provision also applies to notices and other documents only if filing is required by some other rule or provision of law. *See, e.g.,* the notice of withdrawal of charges provisions in Rule 561 (Withdrawal of Charges by Attorney for the Commonwealth), the notice of alibi defense and notice of insanity defense or mental infirmity defense provisions in Rule 573 (Pretrial Discovery and Inspec-

tion), the notice that offenses or defendants will be tried together provisions in Rule 582 (Joinder—Trial of Separate Indictments or Informations), the notice of aggravating circumstances provisions in Rule 802 (Notice of Aggravating Circumstances), and the notice of challenge to a guilty plea provisions in Municipal Court cases in Rule 1007 (Challenge to Guilty Plea).

Comment to Pa.R.Crim.P. 576. Since no rule or provision of law requires that a prosecutor's investigative file be docketed in a case involving review of a private criminal complaint, Rule 576 is inapplicable. Furthermore, the Rules of Professional Conduct referenced by Appellant do not support her claim. Rule 3.4 prohibits an attorney from unlawfully obstructing a party's ability to access evidence. Rule 3.5 bars, in pertinent part, *ex parte* communications with a judge, "unless authorized to do so by law or court order." Pa.R.P.C. 3.5. In the present case, the court directed that the prosecution provide the documentation and no rule mandates that an investigative file be turned over to a private criminal complainant; thus, the Commonwealth did not illegally obstruct Appellant's access to the information. Finally, the Code of Judicial Conduct is not law, but a guideline to be followed. Although the trial court considered the investigative file, it was authorized by law to analyze that file. *See In re Adams,* 764 A.2d 577 (Pa.Super.2000).[3]

■■■ Appellant's final claim is that the trial court erred in not mandating that the

---

**3.** We point out that unlike *In re Wilson,* 879 A.2d 199 (Pa.Super.2005) (*en banc*), this Court has been provided a copy of the investigative file and was able to review that file on appeal. At oral argument, the Commonwealth agreed to supply this Court with the information. Accordingly, this Court entered an order to seal the information and file it with the

clerk of courts so that it could become part of the certified record for purposes of our review. After a thorough review of the investigative file, we conclude that the Attorney General's Office did not conduct a perfunctory investigation in this matter, but engaged in a full and fair examination of the facts and circumstances surrounding this matter.

Attorney General state and prove the policy reason or reasons for its disapproval and erroneously denied Appellant the opportunity to question those policy reasons. Appellant largely repeats her prior arguments, arguing that the Attorney General and Mr. Higgins were friends and that the Attorney General's Office conducted a perfunctory investigation. However, she also argues that the policies expressed by the Commonwealth were never established as normal policies in rape cases. In asserting this portion of her argument, Appellant references *Commonwealth v. Brown*, 447 Pa.Super. 454, 669 A.2d 984 (1995) (*en banc*). We conclude that *Brown* does not warrant reversal.

In *Brown*, this Court found that the prosecution erred in denying a private criminal complaint based solely on policy reasons. In that case, there existed significant evidence that Brown committed several crimes. Brown admitted on the stand during a separate prosecution of another individual for kidnapping, rape, and murder, that he repeatedly lied to police and the court, including at the preliminary hearing. After the person charged with the kidnapping, rape, and murder was acquitted, he filed a private criminal complaint asserting that Brown committed perjury, tampered with evidence, hindered apprehension, obstructed justice, made an unsworn falsification, submitted a false report to law enforcement, and engaged in a criminal conspiracy with the district attorney.

The matter was referred to the Attorney General's Office, which declined to prosecute. The trial court held that the Attorney General's Office abused its discretion in disapproving the private criminal com-

plaint, except for the conspiracy charge. The Attorney General's Office appealed, contending that the trial court's decision to overrule its policy-based decision was in error. The policy reasons proffered for not prosecuting the case were that it was obvious that Brown lied, that the prosecution would be too costly, and that Brown had already spent two years incarcerated.

This Court, in upholding the trial court's decision to overturn the prosecutor's determination, stated that the prosecution "must demonstrate that a clearly defined policy has been established that can be uniformly applied to such complaints." *Id.* at 992. We added that, "If the Attorney General had submitted evidence of an established policy, the trial court would have been able to determine whether, in this case, the Attorney General had actually followed that policy." *Id.* The *Brown* Court did not create a mandatory requirement that the prosecution submit evidence regarding a policy that disapproved of private criminal complaints when a conviction is unlikely.

Moreover, whether a conviction is likely is so inherently part of a prosecutor's discretion in determining whether to file charges that it is a policy that has been uniformly applied since the dawn of governmentally-instituted prosecutions.[4] Based on Appellant's own statements and the statements provided by additional witnesses, we hold that the trial court did not abuse its discretion in upholding the Commonwealth's decision not to prosecute this matter. Hence, we affirm.

Order affirmed.

---

**4.** In *In re Wilson*, 879 A.2d 199, 207–208 (Pa.Super.2005)(*en banc*), this Court detailed the history of criminal prosecutions noting that in colonial Pennsylvania private prosecu-

tions were the most common form of prosecution, and it was not until 1850 that the legislature established the office of district attorney.