J-S23007-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ANTONIO SAUNDERS | : | |
| | : | |
| Appellant | : | No. 2122 EDA 2019 |

Appeal from the Order Entered July 15, 2019
In the Court of Common Pleas of Northampton County Criminal Division
at No(s):  CP-48-MD-0000850-2019,
CP-48-MD-0000850-2019

BEFORE: NICHOLS, J., McCAFFERY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY NICHOLS, J.:                     **FILED JULY 24, 2020**

Appellant Antonio Saunders appeals from the order disapproving of his two private criminal complaints.  On appeal, Appellant contends that the trial court erred by concluding that the District Attorney did not abuse his discretion in disapproving his private criminal complaints.  We affirm and grant Appellant's counsel's petition to withdraw.

### Background for Appellant's Related Criminal Case

We begin with the facts underlying Appellant's related criminal case because they are necessary to understand the context for Appellant's private criminal complaints.[1]

---

[1] Appellant's related criminal case is currently on appeal before this Court. **See Commonwealth v. Saunders**, 684 EDA 2020 (Pa. Super. 2020).

On January 28, 2018, Detective Michael M. Munch of the Colonial Regional Police Department executed an Affidavit of Probable Cause that stated as follows:

On 1/25/19, [Appellant] entered the BB&T Bank at [Route 248 in Lower Nazareth, Pennsylvania]. [Appellant] applied for a signature loan in the amount of $30,000 using the identifying information of Allen Baynes. [Appellant] displayed a Pennsylvania ID card and a social security card in the name of Allen Baynes. [Appellant] also provided the bank with a federal income tax return form in the name of Allen Baynes. [Appellant] also signed the loan application form in the name of Allen Baynes.

Officer Nigro,[2] this department, contacted Allen Baynes who resides in Alabama. Baynes stated he has not been to Pennsylvania and did not apply for a loan, nor did he allow anyone else to apply for a loan in his name.

On 1/28/19, [Appellant] returned to the bank in order to receive his money. At that time, your affiant placed [Appellant] under arrest. [Appellant] was in possession of a Pennsylvania identification card, social security card, and two bank cards, all bearing the name Allen Baynes. A short time later, [Appellant] identified himself as . . . residing in New York. [Appellant] was in possession of a temporary NY driver's license in [Appellant's] name . . . . On the back of the driver's license was a handwritten list of the identifying information of Allen Baynes, including date of birth, email address, and phone number.

Trial Ct. Op., 10/8/19, at 2 (citations omitted).

Appellant was arrested and charged with, among other crimes, forgery, identity theft, and attempted theft by deception. *Id.* at 8. He filed a motion to suppress asserting "that the police had (1) failed to provide him with a

_____

[2] The record did not state Officer Nigro's first name.

- 2 -

receipt and inventory of property taken from him at the time of his arrest; and

(2) failed to prove the existence of an unbroken chain of custody of the

property" in violation of Pennsylvania Rules of Criminal Procedure 208, 209,

and 210. *Id.* at 6. The trial court summarized the testimony at the

suppression hearing as follows:

> Detective Munch testified that an employee of the Lower Nazareth BB&T Bank ("BB&T Bank") had provided Officer Nigro with copies of (1) the loan application that [Appellant] had signed on January 25, 2019 in the name of Allen Baynes, a National Football League referee who lived in Alabama and had no connection to [Appellant]; (2) a Client Information Change Request Form that [Appellant] had signed on January 25, 2019 in the name of Allen Baynes, which listed certain demographic information of Allen Baynes; and (3) a 2017 federal income tax return in the name of Allen Baynes that [Appellant] had presented to the bank on January 25, 2019 to verify his income in support the loan application. The Commonwealth's attorney, James Augustine, Esq., told the [c]ourt that he had provided these documents to [Appellant] in discovery. [Appellant's] attorney, Matthew Deschler, Esq., acknowledged that he had received the referenced documents in discovery and that he had given the documents to [Appellant].
>
> Attorney Augustine told the [c]ourt that, in addition, he had provided [Appellant] with (1) the Criminal Complaint; (2) police reports; (3) the name of the BB&T Bank employee [Jaime Adams] who had positively identified [Appellant] to the police; and (4) a still photograph taken by a BB&T Bank camera showing [Appellant] inside the BB&T Bank on January 25, 2019, the day on which Detective Munch said [Appellant] had applied for the loan, and wearing the same coat [Appellant] had been wearing at the time of his subsequent arrest on January 28, 2019. Attorney Augustine represented to the [c]ourt that the victim, Allen Baynes, would be available to testify at trial.
>
> Detective Munch testified that on January 28, 2019, when he went to BB&T Bank to arrest [Appellant], the bank loan officer who had received the loan application in the name of Allen Baynes on January 25, 2019 positively identified [Appellant] as the man who

had submitted the loan application. Detective Munch said that when he arrested [Appellant], [Appellant] had in his physical possession a Social Security card and a New York interim driver's license, both in the name of [Appellant]. Detective Munch produced a photocopy of [Appellant's] Social Security card.

Attorney Augustine stated, and Detective Munch confirmed, that a BB&T Bank employee would testify that on January 25, 2019 when [Appellant] applied for the loan, [Appellant] presented the bank with a Pennsylvania driver's license bearing his own picture and the name of Allen Baynes. Detective Munch testified that when he arrested [Appellant], [Appellant] did not have the actual Pennsylvania driver's license in his possession. However, Detective Munch said he knew that the Pennsylvania driver's license existed, because he had searched a database maintained by the Pennsylvania Department of Transportation ("PennDOT") and had discovered a transaction record indicating that, a few days prior to [Appellant's] arrest, [Appellant] had applied for and obtained a Pennsylvania driver's license bearing his own picture and the name of Allen Baynes.

Attorney Augustine acknowledged that the Commonwealth did not have in the courtroom that day the two bank cards bearing the name Allen Baynes that were alleged to have been in [Appellant']s possession at the time of his arrest. However, Attorney Augustine noted that [Appellant's] wallet had been taken from him at the time of his arrest, that the wallet was being stored at the Colonial Regional Police Department, and that the wallet might contain both the Pennsylvania driver's license and the two bank cards. The [c]ourt advised Attorney Augustine that it would give him seven days to check for additional evidence, and if the Commonwealth located any additional items, the [c]ourt would hold an additional hearing to make a record of that production.

*Id.* at 3-5 (citations omitted).[3]

_____

[3] The trial court denied Appellant's motion to suppress for two reasons. Trial Ct. Op. at 7-8. The trial court first reasoned that Appellant's motion was untimely, and second, Rules 208 through 210 apply only to property seized by a search warrant, whereas Appellant's property was seized "pursuant to a

**Background for Instant Private Criminal Complaints**

Appellant, acting *pro se*, filed his first private criminal complaint on March 5, 2019, naming Detective Munch, Officer Nigro, and Mr. Adams as defendants. Private Crim. Compl., 3/5/19, at 3. The complaint stated as follows:

> On or about 1/28/2019, BB and T Banker called the complainant stating false misstatements after being coached by Defendants Officers Munch and Nigro; that a $30,000 loan had been approved in the name of Allen Baynes after Officer Nigro had contacted the real Allen Baynes, in Alabama, who had not been to PA, and did not apply for a loan, nor did he allow anyone else to apply for a loan in his name. Still Jaime Adams perpetrated a fraud by misrepresentation of the facts to solicite [sic] the complainant by inducing him and encouring [sic] him that the loan was approved, that she was leaving early today and wanted the complainant to come into BB and T Bank to sign the closing document so that the complainant can get the $30,000 loan with the criminal intent to entrap the complainant. After multiple calls from the Defendant Banker from BB and T Bank solicitating [Appellant] to come into the bank[, Appellant] arrived on 1/28/2019 at approx. 1440 hours to be arrested by the Defendant accomplices Officer Michael Munch and Officer Nigro. Allen Baynes never consented to any of these Defendant's [sic] crimes . . . .

*Id.* at 2-3 (some alterations).

On March 12, 2019, District Attorney John Morganelli disapproved Appellant's first private criminal complaint, briefly reasoning as follows: "prosecutorial discretion not to prosecute." *Id.* at 2. On May 2, 2019,

---

warrantless arrest." *Id.* After a jury trial, Appellant was convicted on June 5, 2019, of the above-mentioned crimes. *Id.* at 8.

Appellant filed a *pro se* petition for review in the trial court, which requested an unbiased "judge to look into this matter."[4]  Pet. for Review, 5/2/19, at 1.

On July 2, 2019, Appellant, *pro se*, filed his second private criminal complaint again naming Detective Munch as a defendant.  Private Crim. Compl., 7/2/19, at 1.[5]  The complaint asserted the following:

> . . . On 1/28/2019, Michael J. Munch, Affidavit of Probable Cause did in fact falsely accused [sic] that on 1/25/2019, [Appellant] entered the BB&T Bank and applied for a signature loan in the amount of $30,000.00, using the identifying information of Allen Baynes.  That [Appellant] displayed a Pa. ID card and a social security card in the name of Allen Baynes.  [Appellant] also signed the loan application.  That on 1/28/2019, after Michael Munch[] placed [Appellant] under arrest, [Appellant] was in possession of a Pa. ID card, social security card and two bank cards, all bearing the name Allen Baynes.  [Appellant] now has evidence that no such loan was ever applied for nor signed for while at BB&T Bank and sworn statements and the Commonwealth that no such Pa. ID nor social security card nor Bank card was found.

*Id.* at 2.  Appellant accused Detective Munch of violating the Savings Association Code of 1967, and false statements in a deputy's affidavit.  *See id.* (citing 7 P.S. § 6020, 16 P.S. § 1207-A, and 16 P.S. § 4207).

On July 2, 2019, Attorney Morganelli disapproved Appellant's second private criminal complaint again reasoning "prosecutorial discretion not to prosecute."  *Id.*  On July 8, 2019, Appellant filed a *pro se* petition for review in the trial court, which essentially reiterated the factual assertions in his

---

[4] As quoted below, Pennsylvania Rule of Criminal Procedure 506 does not state a time limitation for filing a petition for review.  *See* Pa.R.Crim.P. 506.

[5] The private criminal complaint was dated June 27, 2019.

second private criminal complaint. ***See*** Mot. to Review the Decision of the District Attorney Denying the Private Crim. Compl., 7/8/19, at 1-2. Appellant also contended he was "erroneously convicted due to insufficient evidence" and was "entitled [to have] the court to review and consolidate the perjury charges with the other charges" under review. ***Id.*** at 2.

On July 15, 2019, the trial court denied both of Appellant's petitions for review, but docketed the order at the wrong docket number, specifically CP-48-CR-538-2019, which was Appellant's criminal case. Order, 7/15/19 (attached as Ex. A to Appellant's Brief). At the above-captioned docket number, Appellant filed a timely *pro se* notice of appeal on July 18, 2019, and a timely court-ordered Pa.R.A.P. 1925(b) statement.

The docket states that on October 29, 2019, the trial court appointed Robert Eyer, Esq., as appellate counsel for the above-captioned appeals. Order, 10/29/19. Attorney Eyer filed an appellate brief with this Court and subsequently filed an application to withdraw as counsel on May 8, 2020, which we resolve below.

Appellant raises the following issue on appeal: "Whether the trial court erred in finding that the District Attorney did not abuse his discretion when disapproving the private criminal complaints." Appellant's Brief at 4.

In support, Appellant summarizes the applicable law, as well as the facts and procedural posture. ***Id.*** at 11-19. He argues that the record established that Detective Munch made false statements that justified the private criminal

complaints. *Id.* at 19. Specifically, Appellant contends Detective Munch falsely averred that Appellant had signed a written application for a loan in the victim's name and that when arrested, Appellant possessed identification documents for another victim. *Id.* at 19-20. Appellant asserts Detective Munch contradicted himself at Appellant's criminal pretrial hearing and trial and the Commonwealth failed to produce the written loan application and the identification documents. *Id.* at 20. Further, Appellant argues that the Commonwealth produced both of the aforementioned items at a pretrial hearing without "any chain of custody whatsoever." *Id.* Appellant concludes that the trial court erred by holding that the District Attorney did not abuse his discretion. *Id.*

The Commonwealth counters that Appellant failed to establish that the District Attorney abused his discretion when denying Appellant's private criminal complaints. Commonwealth's Brief at 6. The Commonwealth summarizes the applicable law, *id.* at 6-9, and frames Appellant's argument as "the trial court abused its discretion based on evidentiary reasons, essentially arguing that his private criminal complaint set out a *prima facie* case on which to bring charges." *Id.* at 9-10. In the Commonwealth's view, "whether a private criminal complaint establishes a *prima facie* case" is one of many factors that a District Attorney takes into consideration. *Id.* at 10. The Commonwealth agrees with the trial court's reasoning and summarizes it as follows:

Appellant has failed to prove that then-District Attorney Morganelli abused his discretion in disapproving Appellant's private criminal complaint because he has produced no evidence that the decision was made in bad faith or fraudulently, nor has he demonstrated that the decision was discriminatory, arbitrary, or pre-textual. Rather, the private criminal complaints were denied because they were made in retaliation for the filing of criminal charges against Appellant and presented issues that were more appropriately raised during pre-trial litigation or through cross-examination.

*Id.* at 11.

The trial court quoted the District Attorney's reasons for disapproving Appellant's private criminal complaints: "prosecutorial discretion not to prosecute."[6]  Trial Ct. Op. at 29.  The trial court concluded, "[h]ere, the District Attorney stated his reason for disapproval of [Appellant's] Private Criminal Complaints, and [Appellant] has failed to assert any basis for his claim that the stated reason was inadequate."  *Id.* at 30.

We state the following with respect to the standard of review:

It is settled that following the receipt of a petition to review the Commonwealth's decision to disapprove a private criminal complaint, the court must determine whether the Commonwealth's rationale for disapproving the private criminal complaint is for purely legal reasons or if it is based solely or in part on policy considerations.  When the Commonwealth's disapproval is based wholly on legal considerations, the court employs a *de novo* review.  Where the decision includes or is entirely based on policy considerations, the trial court reviews the Commonwealth's determination under an abuse of discretion standard.

_____

[6] The trial court's Rule 1925(b) opinion addressed other arguments that Appellant did not raise on appeal.  Therefore, we do not summarize those portions of the trial court's Rule 1925(b) opinion.

*Braman v. Corbett*, 19 A.3d 1151, 1157 (Pa. Super. 2011) (citations omitted). This Court similarly reviews a trial court's decision addressing the Commonwealth's disapproval of a private criminal complaint on policy considerations for an abuse of discretion. *In re Wilson*, 879 A.2d 199, 215 (Pa. Super. 2005) (*en banc*) (stating, "the appellate court will review the trial court's decision for an abuse of discretion, in keeping with settled principles of appellate review of discretionary matters."). "This deferential standard recognizes the limitations on judicial power to interfere with the district attorney's discretion in these kinds of decisions." *Id.*

Pennsylvania Rule of Criminal Procedure 506 states as follows:

(A) When the affiant is not a law enforcement officer, the complaint shall be submitted to an attorney for the Commonwealth, who shall approve or disapprove it without unreasonable delay.

(B) If the attorney for the Commonwealth:

(1) approves the complaint, the attorney shall indicate this decision on the complaint form and transmit it to the issuing authority;

(2) disapproves the complaint, the attorney shall state the reasons on the complaint form and return it to the affiant. Thereafter, the affiant may petition the court of common pleas for review of the decision.

Pa.R.Crim.P. 506.

The private criminal complainant has the burden to prove the district attorney abused his discretion, and that burden is a heavy one. In the Rule 506 petition for review, the private criminal complainant must demonstrate the district attorney's decision amounted to bad faith, fraud or unconstitutionality. The complainant must do more than merely assert the district

attorney's decision is flawed in these regards. The complainant must show the facts of the case lead only to the conclusion that the district attorney's decision was patently discriminatory, arbitrary or pretextual, and therefore not in the public interest. In the absence of such evidence, the trial court cannot presume to supervise the district attorney's exercise of prosecutorial discretion, and should leave the district attorney's decision undisturbed.

*In re Wilson*, 879 A.2d at 215.

In *Wilson*, the complainant's petition for review asserted that "his complaint, along with his medical records and affidavit, should be approved because he set forth a *prima facie* case . . . ." *Id.* at 216. The complainant concluded that because he presented a *prima facie* case, the District Attorney's disapproval was "suspect." *Id.* at 217. Further, the complainant questioned the "District Attorney's decision, as a matter of policy, to refuse to commit the resources of his office to a case where the likelihood of a conviction was minimal." *Id.* at 210. The trial court disagreed, holding the District Attorney did not abuse its discretion because the District Attorney presented "two valid policy reasons for disapproving [the complainant's] private complaint," and because there was "no evidence of bad faith, fraud or unconstitutionality." *Id.* at 218. The *Wilson* Court similarly held that the trial court did "not demonstrate an abuse of discretion," reasoning that the complainant's "allegation of bad faith in his petition [for review] is based only on suspicion, and suggests partiality or favoritism without factual support." *Id.*

Instantly, Appellant's petitions for review requested an unbiased judge to review his first private criminal complaint and argues that he is entitled to have the trial court review his second private criminal complaint. ***See*** Pet. for Review, 5/2/19, at 1; Mot. to Review the Decision of the District Attorney Denying the Private Crim. Compl., 7/8/19, at 1-2. Appellant's petitions for review, similar to the complainant's petition for review in ***Wilson***, do not explain how the District Attorney's decision "was patently discriminatory, arbitrary or pretextual." ***See Wilson***, 879 A.2d at 215. As in ***Wilson***, Appellant's petitions for review simply do not establish that the District Attorney acted in bad faith, fraudulently, or unconstitutionally. ***See id.*** Appellant's appellate argument similarly rehashes his contention that he established a *prima facie* case, but does not explain how the District Attorney's decision was discriminatory, arbitrary, or pretextual. ***See id.*** Because Appellant failed to establish the trial court abused its discretion, we affirm the order denying Appellant's petitions for review. ***See id.***

Turning to Attorney Eyer's petition to withdraw as appointed counsel, we state the following as background. Pennsylvania Rule of Criminal Procedure 122 provides for the appointment of counsel as follows:

(A) Counsel shall be appointed:

(1) in all summary cases, for all defendants who are without financial resources or who are otherwise unable to employ counsel when there is a likelihood that imprisonment will be imposed;

(2) in all court cases, prior to the preliminary hearing to all defendants who are without financial resources or who are otherwise unable to employ counsel;

(3) in all cases, by the court, on its own motion, when the interests of justice require it.

Pa.R.Crim.P. 122; *see also* 16 P.S. § 9960.7 (stating, "For cause, the court of common pleas may, on its own motion or upon the application of the public defender, the defendant, or person charged with being a juvenile delinquent, appoint an attorney other than the public defender to represent the **person charged** at any stage of the proceedings." (emphasis added)).

Generally, the

[S]ixth [A]mendment of the United States Constitution guarantees the accused in all criminal prosecutions the assistance of counsel for his defense. The triggering event for [S]ixth [A]mendment rights to attach is the commencement of adversary judicial proceedings against the defendant. The [S]ixth [A]mendment does not afford such assistance of counsel to a plaintiff in a civil action, such as the [plaintiff's action at issue], where no loss of liberty is involved.

While it is true that in some instances counsel will be appointed for a plaintiff in a civil action, generally it is a situation involving broad policy considerations implicating a state interest of a civil rights nature such as a fair housing violation, sexual or other job discrimination or where liberty interests are implicated. The state has reasonably adjusted to these necessities by providing legal agencies to fulfill due process requirements, which will assist indigent persons who are wronged, or the courts have called upon *pro bono* services of the bar associations absent public resources. Each class of case and in some respects each case is scrutinized to determine if the right to counsel is required under the due process provisions of federal and state constitutions. The requirements are more clearly stated and more generally applicable when a party is a defendant in certain civil actions, rather than a plaintiff. It is also clear that classification of a case as civil as opposed to criminal will not be determinative, but

- 13 -

> rather, whether the action will be perceived as ultimately depriving a person of a higher liberty interests.

*May v. Sharon*, 546 A.2d 1256, 1258 (Pa. Super. 1988) (footnote, citations, and quotation marks omitted); *see generally* Pa.R.Crim.P. 122; 16 P.S. § 9960.7. There is a right to counsel for persons subject to, among other things, (1) incarceration or probation for summary offenses, (2) commitment under the Mental Health Procedures Act, (3) contempt, or (4) paternity actions.[7] We have not identified any legal authority addressing whether a party who filed a private criminal complaint, *i.e.*, the accuser and not the accused, is constitutionally entitled to appointed counsel. Indeed, because such a party is the accuser, that party would not be subject to imprisonment or other deprivations of higher liberty interests based on the claims in a private criminal complaint.[8] *See May*, 546 A.2d at 1258.

Here, Appellant filed two private criminal complaints. Appellant is the accuser and not an indigent defendant. As the accuser, he is not subject to

---

[7] *See* Pa.R.Crim.P. 122; 50 P.S. § 7303; *Commonwealth v. Diaz*, 191 A.3d 850, 862-63 (Pa. Super. 2018); *Rodriguez v. Rodriguez*, 600 A.2d 589, 590-91 (Pa. Super. 1991).

[8] It follows that the requirements of *Anders*/*Santiago* do not apply in considering whether to grant appointed counsel's petition to withdraw from representing the accuser. *See Anders v. California*, 386 U.S. 738 (1967); *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009). In *Santiago*, our Supreme Court summarized the constitutional underpinnings for *Anders*, including "that under the Sixth Amendment, the indigent have the same right to effective representation by an active advocate as a **defendant** who can afford to retain counsel . . . ." *Santiago*, 978 A.2d at 355 (emphasis added) (summarizing *McCoy v. Wisconsin*, 486 U.S. 429 (1988)).

the deprivation of "higher liberty interests" as a consequence of the claims in his complaints. *See May*, 546 A.2d at 1258. Because Appellant is not subject to the deprivation of higher liberty interests as discussed in *May*, he is not constitutionally entitled to appointed counsel. *See id.*; *see also* 16 P.S. § 9960.7 (noting trial court may appoint counsel to represent the "**person charged**," *i.e.*, not the accuser).

Attorney Eyer's petition to withdraw his representation of Appellant, which he filed after the parties' appellate briefs were filed, contended that Appellant alleged Attorney Eyer is incompetent, has a conflict of interest, and violated the Rules of Professional Conduct. Appl. to Withdraw as Counsel, 5/8/20, at 4. Attorney Eyer averred that there is a breakdown in the attorney-client relationship and requests permission to withdraw or a remand to the trial court for any hearing this Court deems necessary. *Id.* at 4-5. Because we have resolved Appellant's appeal on its merits, "we see no reason not to grant the motion for permission to withdraw." *Commonwealth v. Goldsmith*, 619 A.2d 311, 316 (Pa. Super. 1993) (granting the defendant's counsel's petition to withdraw because of a breakdown in the attorney-client relationship and because the Court resolved the "issues on appeal on their merits"). For these reasons, we find the trial court did not abuse its discretion, and we affirm the order below. *See Braman*, 19 A.3d at 1157; *In re Wilson*, 879 A.2d at 215.

Order affirmed. Counsel's petition to withdraw granted.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/24/20