616 A.2d 681

**COMMONWEALTH of Pennsylvania**

v.

**Richard PRICE, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 21, 1992.

Filed Nov. 13, 1992.

Brian E. Quinn, Philadelphia, for appellant.

Kathy L. Echternach, Asst. Dist. Atty., Philadelphia, for Com.

Before OLSZEWSKI, FORD ELLIOTT and HESTER, JJ.

OLSZEWSKI, Judge:

This is an appeal from a judgment of sentence entered against defendant Richard Price ("Price"). After a non-jury waiver trial before Judge G. Craig Lord, Price was convicted of one count each of rape, indecent assault, indecent exposure and simple assault. After post-verdict motions were filed and denied, Price was sentenced to ten to twenty-three months incarceration. This timely appeal followed. Price now challenges both the sufficiency and weight of the evidence supporting the rape conviction. We find that both claims fail, and affirm the judgment of sentence.

On August 20, 1990, Price went to several bars with a friend and former work colleague [hereinafter referred to as "J.L."]. At approximately 9:30 p.m. that evening, Price met J.L. at her home in Philadelphia. The two spent the evening drinking

and dancing at several nightclubs proximate to J.L.'s home. At approximately 4:00 a.m., the two decided to call it a night, and Price drove J.L. home. After Price's protestations that he was too drunk to drive home, J.L. invited Price to sleep on her couch. Once inside her apartment, J.L. pointed out the couch to Price, fixed herself a snack and retired to her bedroom. J.L. finished her snack, talked to a friend on the telephone, and fell asleep. She was awakened shortly thereafter by Price, who was on top of her engaging in sexual intercourse. J.L. screamed and pushed Price away, eventually kicking him out of the apartment. The next morning, J.L. reported the incident to the police and was administered concomitant medical examinations. J.L. testified to these events at trial.

Price's account of the night is somewhat different from J.L.'s. Although he admits to having intercourse with J.L., he contends that the encounter was consensual. Price testified that after he stretched out on the couch, he heard J.L. summon him from her upstairs bedroom. Price entered J.L.'s room and found her lying naked. He disrobed and climbed into bed with her. Price testified that the couple engaged in foreplay, and then he rolled on top of J.L. After he penetrated her, J.L. demanded that Price leave. Confused at her reaction, Price complied by dressing and leaving promptly.

Judge Lord found Price's account of the night unbelievable and convicted Price of the charges. Only the rape conviction is contested here. Price argues that the verdict is supported by insufficient evidence, and that the verdict is against the weight of the evidence. We will discuss each of these contentions in turn.

Price challenges the sufficiency of the evidence to convict him of rape on four separate grounds: (1) evidence of the location of the semen on J.L.'s nightshirt is more consistent with Price's account than it is with J.L.'s; (2) the evidence of "forcible compulsion" is insufficient to sustain the verdict; (3) the trial court disregarded character evidence proffered by Price; and (4) the unremarkable results of J.L.'s medical

examinations are inconsistent with those of a person who had just been raped.

The standard of review for evaluating the sufficiency of evidence on appeal is:

> well-settled and quite narrow. We must determine whether, viewing all the evidence at trial, as well as the reasonable inferences therefrom, in the light most favorable to the Commonwealth, the trier of fact could have found that each element of the offense was proven beyond a reasonable doubt. Both direct and circumstantial evidence can be considered equally when assessing the sufficiency of the evidence.

*Commonwealth v. Rementer*, 410 Pa.Super. 9, 598 A.2d 1300 (1991) (citations omitted).

■ Initially, we note that a sufficiency challenge asks only whether evidence exists on the record that, if believed, would support a conviction for rape. We may not assess the credibility or veracity of the evidence. For this reason, we must view the evidence most favorably to the Commonwealth, the verdict winner. Therefore, Price's first, second and fourth challenges to the sufficiency of the evidence are not sufficiency challenges at all. Those challenges contend that the evidence is "inconsistent" with J.L.'s account of the events, and thus suggest that her account is not credible. Such challenges are to the weight of the evidence. We will defer discussion on these issues until later.

Price's third challenge, his contention that there is no evidence of "forcible compulsion," tests whether the evidence establishes the elements of rape, and is a proper challenge. Unfortunately for Price, however, "forcible compulsion" is an element of rape that the Commonwealth was not required to prove. A person commits rape if he:

> engages in sexual intercourse with another person not his spouse:
>
> (1) by forcible compulsion;
>
> (2) by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution;

(3) who is unconscious; *or*

(4) who is so mentally deranged or deficient that such person is incapable of consent.

18 Pa.C.S.A. § 3121 (emphasis added).

Price argues that the Commonwealth has failed to prove forcible compulsion beyond a reasonable doubt. In support for his argument, Price cites *Commonwealth v. Titus*, 383 Pa.Super. 54, 556 A.2d 425 (1989). In *Titus*, the defendant returned to his home after an evening of drinking. He climbed into bed with his thirteen-year-old daughter, who was sleeping, and after she awoke, had sexual intercourse with her. The testimony at trial indicated that the victim did not resist defendant until after intercourse had occurred. We held that there was insufficient evidence of physical compulsion, as well as insufficient evidence to prove a relationship between victim and defendant that would allow an inference of force from psychological, or intellectual pressure.

■ Citing *Titus* as authority, Price claims that the "totality of the circumstances" does not prove that any forcible compulsion or threat of force occurred. *Titus* is distinguishable because there the alleged rape victim was awake when defendant penetrated her. It was only after intercourse that the victim showed visible resistance. Here, J.L. was asleep when Price penetrated her, and woke up while Price was having intercourse with her. Immediately after waking up, J.L. testified that she screamed at Price and told him to "get off" of her. Despite J.L.'s immediate protest, Price continued penetration. A physical struggle ensued. This evidence is sufficient to allow a factfinder to find forcible compulsion beyond a reasonable doubt.

■ In any event, by relying on *Titus* and cases discussing forcible compulsion, Price's argument entirely ignores subsection (3) of the rape statute. This section proscribes an individual from having intercourse with an individual who is "unconscious." 18 Pa.C.S.A. § 3121(3). The statute does not define the term "unconscious," and we have found no cases

interpreting it. We conclude that a sleeping victim is "unconscious" under § 3121(3).

The Statutory Construction Act requires us to interpret the statute consistent with the legislative intent behind the enactment. 1 Pa.C.S.A. § 1921. Moreover, we are to construe words and phrases according to their common and approved usage. *Id.* at § 1903; *Commonwealth v. Stanley,* 498 Pa. 326, 446 A.2d 583 (1982).

■ In *Commonwealth v. Carter,* 274 Pa.Super. 538, 418 A.2d 537 (1980), we held that the legislative purpose behind enacting subsection (d) of the rape statute (proscribing intercourse with mentally deficient persons) was to protect against sexual intercourse with persons unable to consent. Likewise, we hold here that the subsection proscribing intercourse with "unconscious" persons was enacted to proscribe intercourse with persons unable to consent because of their physical condition.

Webster defines "unconscious" as "not knowing or not perceiving: unaware." Webster's New Collegiate Dictionary, 9th Ed. Thus, consistent with the common definition of "unconscious," and the legislative intent behind the rape statute, we hold that engaging in sexual intercourse with a sleeping victim was intended to be proscribed by § 3121(3). A person who is asleep is certainly unaware of her surroundings and unable to protect against the serious personal intrusion caused by nonconsensual intercourse.[1]

The evidence is sufficient to sustain a conviction under § 3121(3). J.L. testified that she was alone in her room, and when she woke up, Price was on top of her. His penis was

---

1. Price, in the second part of his brief, also argues that the "gap" in J.L.'s testimony prior to penetration is insufficient to prove lack of consent. He cites *Commonwealth v. Goodman,* 182 Pa.Super. 205, 126 A.2d 763 (1956) for this proposition. In *Goodman,* we held that it was improper for the trial judge to preclude testimony concerning events leading up to the alleged rape when those incidents could have established an inference of consent. Here, the victim testified that she was asleep when Price penetrated her. To require a sleeping or "unconscious" person to describe the events taking place while she is sleeping would be foolish.

inside her vagina. (N.T. 9/9/91 p. 72.) She immediately protested, screaming at Price. Price continued to penetrate, and a struggle ensued. *Id.* at 73–74. Finally, Price rolled off J.L. and J.L. kicked him out of the apartment. *Id.* at 75. J.L. reported the incident to the police the next morning, and both officers testified at trial. There was also a stipulation to medical exhibits that confirmed the presence of spermatozoa in J.L.'s body and on her nightshirt the morning after the incident. *Id.* at 129. This evidence is amply sufficient to allow a factfinder to find Price guilty of rape beyond a reasonable doubt.

Price also argues that the verdict was against the weight of the evidence. This is a much more narrow inquiry than a sufficiency challenge, since we walk the fine line of objectively determining the propriety of the trial court's decisions and invading the province of the factfinder.[2] A trial court may award a new trial on the basis that the verdict was against the weight of the evidence if the factfinder's verdict is so contrary to the evidence as to shock one's sense of justice. *Commonwealth v. Whitney*, 511 Pa. 232, 512 A.2d 1152 (1986); *Commonwealth v. Murray*, 408 Pa.Super. 435, 597 A.2d 111 (1991). An appellate court may review a trial court's disposition of a motion for a new trial based on the weight of the evidence, but may only upset that decision if the trial court has abused its discretion. The appellate court may not substitute its judgment for that of the lower court. *Murray* at 440, 597 A.2d at 114; *Thompson v. City of Philadelphia*, 507 Pa. 592, 493 A.2d 669 (1985). With these precepts in mind, we cannot find that the trial judge abused his discretion in denying Price's motion for a new trial.

As noted above, Price argues that several "inconsistencies" between the physical evidence and J.L.'s testimony demand a

2. In *Commonwealth v. Murray*, 408 Pa.Super. 435, 597 A.2d 111 (1991), this Court affirmed its right and duty to review a trial court's refusal to grant a new trial on the basis that a verdict is against the weight of the evidence. *Contra, Murray*, (Olszewski, J., concurring in part and dissenting in part) (appellate review of weight of the evidence challenges is at variance with the fact-finding province of the jury and not properly the subject of appellate review).

new trial. He also argues that the court ignored evidence of prior sexual conduct between J.L. and Price. Finally, Price contends that J.L.'s assertion that she was asleep while Price was penetrating her is unbelievable. We will briefly address all of these arguments and dispose of them as meritless.

The law is well settled that the factfinder is entitled to believe all, part or none of the evidence adduced at trial. *Commonwealth v. Sullivan,* 399 Pa.Super. 124, 581 A.2d 956 (1990); *Commonwealth v. Westcott,* 362 Pa.Super. 176, 523 A.2d 1140 (1987). The principle evidence at trial was two conflicting accounts of the alleged rape. Thus, the credibility of the witnesses was crucial to a finding of innocence or guilt. A determination of credibility lies solely within the province of the factfinder. *Westcott, supra; Commonwealth v. Shaver,* 501 Pa. 167, 460 A.2d 742 (1983). Moreover, any conflict in the testimony goes to the credibility of the witnesses and is solely to be resolved by the factfinder. *Commonwealth v. Kaminski,* 349 Pa.Super. 78, 502 A.2d 1281 (1985). Finally, the testimony of one person, the injured victim, as to the element of penetration is sufficient to convict a defendant of rape. *Commonwealth v. Shirey,* 333 Pa.Super. 85, 481 A.2d 1314 (1984).

Price's main argument involves the nightshirt that J.L. was wearing on the night of the sexual encounter. He claims that the physical evidence indicates that semen was found on the upper half of J.L.'s nightshirt. This fact, according to Price, indicates that J.L. was not wearing the nightshirt at the time of the intercourse. This is more consistent with his testimony that J.L. was naked when he entered her room, as opposed to the testimony of J.L. who contended that Price only rolled her nightshirt up to her stomach. He contends that it is not possible for the semen to be on the upper half of the shirt if J.L. was wearing it. We disagree.

There was no testimony at trial concerning where or when Price ejaculated. His argument assumes that he did so below J.L.'s waist, but this fact does not appear in the record. As the trial court noted, the shirt could have absorbed the semen

after the incident. J.L. testified that there was a scuffle on the bed; she could easily have contacted the semen in the midst of her struggle to get away from Price. Moreover, the trial court did not consider the location of the semen probative of innocence or guilt. We cannot hold that Price's characterization of this evidence is as absolute as he would have us believe. The factfinder could have entertained Price's theory and reasonably rejected it.

Price also contends that the trial court disregarded character evidence that was admitted on his behalf. Price contends that in a rape trial where the credibility of the victim and defendant are of paramount importance, introduction of evidence of the defendant's good reputation may have the effect of raising a reasonable doubt. *See, Commonwealth v. Carter,* 409 Pa.Super. 184, 597 A.2d 1156 (1991); *Commonwealth v. Luther,* 317 Pa.Super. 41, 463 A.2d 1073 (1983). We do not disagree with this proposition. We do disagree with the contention that merely because character evidence is offered, a guilty verdict is against the weight of the evidence. The factfinder, after considering character evidence, may weigh it as it sees fit.

Price also argues that the evidence of J.L.'s medical examinations were normal, and that her testimony was cool and levelheaded. These characteristics, he claims, are inconsistent with those expected of a person who has just been raped. This argument is disingenuous. We will not substitute our judgment for the factfinder's based on Price's criteria for proper reactions to rape.

Price also asserts that the trial court did not consider Price's testimony during cross examination concerning several prior sexual encounters between Price and J.L. First, we note that J.L. specifically denied that any previous encounters had occurred. Second, the trial court noted specifically that it found Price's testimony to be unbelievable. Thus, the factfinder could reasonably have found that no such sexual encounters ever took place. He chose to believe J.L. and not Price. This is entirely appropriate.

Finally, Price finds it unbelievable that J.L. did not awake as appellant, who weighs approximately 225 pounds, prepared to engage in intercourse. Rather, Price contends that J.L. must have had an impaired recollection of the events, assumedly due to intoxication. Again, Price asks us to adjudge the credibility of his story as opposed to J.L.'s. This is the sole function of the factfinder, and we will not disturb his finding.

We find, therefore, that the trial court did not abuse its discretion in finding that the verdict was not against the weight of the evidence.

The judgment of sentence is affirmed.