J-S69003-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| RODNEY BANKHEAD | |
| Appellant | No. 529 EDA 2014 |

Appeal from the Judgment of Sentence January 24, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0014137-2012

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| RODNEY BANKHEAD | |
| Appellant | No. 561 EDA 2014 |

Appeal from the Judgment of Sentence January 24, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0012317-2009

BEFORE:  GANTMAN, P.J., FORD ELLIOTT, P.J.E., and OLSON, J.

MEMORANDUM BY GANTMAN, P.J.:          **FILED DECEMBER 17, 2015**

Appellant, Rodney Bankhead, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his jury

trial convictions for one (1) count of aggravated assault and two (2) counts of criminal solicitation.[1] We affirm.

The trial court set forth the relevant facts of this appeal as follows:

Complainant Rose Miller testified that in February 2009 she lived with her aunt Vallerie Townes [in North Philadelphia] with [Complainant's] three children, ages 16, 13, and 11 years, two of whom [were] fathered by [Appellant]. [Complainant] explained that she first met Appellant while working at a strip club, the One Nine Club[,] which Appellant managed. After the birth of her daughter in 2001[,] Complainant left the strip club and ultimately began working as a home health care provider.

At some point, Appellant left and upon his return the two moved into [Appellant's] father's home in the West Oak Lane section of Philadelphia. Complainant stated that soon thereafter, Appellant began accusing her of having affairs with other men while he was away. Their relationship continually deteriorated to the point that Appellant became physically abusive. [Complainant] described an incident that occurred while she was at the home of one of her clients and Appellant called her cell phone and did not get an answer. When they finally spoke she told Appellant where she was located[,] at which point he arrived, grabbed her by the collar, and dragged her down the front steps of her client['s] residence. Complainant left the premises and Appellant followed her in his car, ranting and raving at her. Complainant returned home and Appellant continued screaming and hollering at her and he kicked and hit her. Appellant's father's wife arrived and called police, whereupon Complainant gathered her belongings and her children. Eventually [Complainant and her children] went to live with her aunt.

Complainant testified that on February 21, 2009[,] she went to the Pike Bar located near her aunt['s] home. She returned home after the bar closed at 2:00 AM the next

---

[1] 18 Pa.C.S.A. §§ 2702 and 902, respectively.

morning but went out shortly thereafter to purchase cigarettes for her aunt. Complainant stated that upon exiting the house, she observed Appellant standing on the street besides his black jeep. Complainant explained that she did not feel threatened by Appellant and that she got into the jeep with him and engaged in a conversation about their children. They traveled to Appellant's apartment house located in the 6500 block of 7th Street, Philadelphia, PA. Complainant testified that en route, she observed that Appellant had a black handgun on his right hip in his waistband. After entering the house, [Complainant] and Appellant went to Appellant's bedroom where Complainant observed tools, tape, rope, plastic, and a piece of carpet laid out. Appellant then told Complainant that he was going to ask her questions and that if she did not answer truthfully he would hurt her. He also threw her cell phone against the apartment wall and it broke into pieces. Complainant testified that Appellant stated that he had a plan and that he was going to cut her head off and sit it on her aunt's steps, and that he would then throw the rest of her body into the river. Complainant stated that Appellant was in a rage and began questioning her about past relationships that she had with other people. As he interrogated her, Appellant beat Complainant with…a hammer multiple times about the head, arms and legs as she sat on the bed crying. She further testified that Appellant was also in possession of two knives. Appellant pointed the larger of the knives at Complainant's nose and inflicted a cut. At one point he pinned Complainant down onto the bed and pointed the knife at her chest. Complainant injured her fingers trying to remove the knife from her chest area. Complainant described that Appellant then got up and grabbed the other knife. He swung it, slicing her arm, while at the same time screaming that he was going to kill her. As a result of the assault, Complainant suffered injur[ies] to the back and thigh, a deep knife wound to the left arm, deep bruising and lacerations around the left eye and face. Eventually, Complainant was able to free herself and she escape[d]. She testified that she ran down the street and began knocking on the windows of the houses along the street asking for help. Appellant caught up with Complainant and pinned her to the ground. He told her that if she did not come back to the house she would never see her children

again. Complainant returned to the house with Appellant whereupon he directed Complainant to remove her clothing and began beating her with the hammer as he continued with his interrogation. Appellant kept Complainant in his bedroom until the next Monday morning at which time he prepared breakfast, which Complainant ate, and he then transported Complainant to the home of a client for whom she was scheduled to provide care. She called her aunt and related the incident. Later, the police were called and Complainant was transported to the hospital for treatment.

Philadelphia Detective Gerard Winward testified that on February 24, 2009[,] he conducted an interview with Complainant and recorded her formal statement. As a result of what Complainant reported to him, [Detective] Windward prepared an Affidavit of Probable Cause and obtained a warrant for Appellant's arrest. Appellant was finally arrested on July 23, 2009.

Timothy Burgess testified that in the summer of 2012 he came into contact with Appellant while they were inmates housed at the Philadelphia Detention Center where they conversed and Appellant stated that he wanted [Mr.] Burgess to make sure Complainant did not come to court on October 29, 2012. [Mr.] Burgess related that Appellant emphasized that he wanted [Mr.] Burgess to do whatever [was] necessary to make sure that Complainant did not appear for court. [Mr.] Burgess explained that he was due to be released from the Detention Center a few weeks later and would then have an opportunity to complete the task. Appellant described Complainant to [Mr.] Burgess, told him that she had a tattoo of a rose on her arm, and directed [Mr.] Burgess to the bar at Germantown Avenue and Pike Street which Complainant frequented. [Mr.] Burgess stated that he knew Appellant before they met in the Detention Center, having frequented the strip club Appellant managed. [Mr.] Burgess testified that he also knew Complainant from the strip club and knew that she was Appellant's girlfriend. Appellant instructed [Mr.] Burgess to put "Visine" into Complainant's drink[,] saying that it would act like a "mickey" and distort her memory. [Appellant] explained that he did not want [Mr.] Burgess to kill Complainant but nevertheless to do whatever [was]

- 4 -

necessary to prevent her from coming to court. Appellant offered to pay [Mr.] Burgess $40,000 for completing the task.

[Mr.] Burgess told Appellant he would take care of preventing Complainant from appearing in court. However, instead, [Mr. Burgess] sent a letter to the district attorney and reported the incident.

(Trial Court Opinion, filed April 30, 2015, at 2-5). Procedurally, Appellant's initial trial resulted in a mistrial due to a hung jury. The Commonwealth retried Appellant, and a jury convicted Appellant on October 25, 2013, of aggravated assault, criminal solicitation to commit aggravated assault, and criminal solicitation to intimidate a witness or victim. On January 24, 2014, the court sentenced Appellant to consecutive terms of ten (10) to twenty (20) years' incarceration for aggravated assault, ten (10) to twenty (20) years' incarceration for solicitation to commit aggravated assault, and five (5) to ten (10) years' incarceration for solicitation to intimidate a witness or victim, followed by ten (10) years' probation. Appellant filed a timely post-sentence motion on January 31, 2014, which the court denied on February 5, 2014. Appellant filed a timely notice of appeal on February 17, 2014. On May 14, 2014, the court ordered Appellant to file a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b). After the court granted two extensions, Appellant filed a Rule 1925(b) statement on September 8, 2014, and requested permission to supplement the Rule 1925(b) statement following receipt of the trial transcripts. The court granted Appellant's request and ordered Appellant to file a supplemental

Rule 1925(b) statement by January 9, 2015. On January 21, 2015, Appellant filed a supplemental Rule 1925(b) statement, which the court accepted as timely filed.

Appellant raises a single issue for our review:

> WAS THE EVIDENCE INSUFFICIENT TO SUPPORT A CONVICTION OF AGGRAVATED ASSAULT?

(Appellant's Brief at 3).

In his sole issue, Appellant argues Complainant falsely told the police that Appellant had forced her into the vehicle but later testified at trial that she had entered Appellant's vehicle voluntarily. Appellant asserts Complainant again lied to the police again when she said she took a cab to work after the incident but later testified at trial that Appellant had given her a ride. Appellant further contends Complainant's injuries were inconsistent with her allegation that Appellant had repeatedly hit her on the head with a hammer. Appellant claims the evidence also failed to show his conduct was sufficiently reckless or intentional. Appellant concludes the evidence was insufficient to support his conviction for aggravated assault. We disagree.

A challenge to the sufficiency of the evidence implicates the following legal principles:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In

addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super. 2005) (quoting *Commonwealth v. Bullick*, 830 A.2d 998, 1000 (Pa.Super. 2003)).

The Crimes Code defines aggravated assault in relevant part as follows:

**§ 2702.  Aggravated Assault**

**(a) Offense defined.—**A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]

\* \* \*

18 Pa.C.S.A. § 2702(a)(1).  "Serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious,

- 7 -

permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301.

Instantly, Appellant held Complainant in his apartment for over twenty-four hours. During that time, Appellant intentionally and repeatedly beat Complainant on her head, arms, and legs with a hammer. Contrary to Appellant's contention, Complainant's emergency room doctor testified that Complainant's head injuries could have been caused by blunt force trauma inflicted with a hammer. Moreover, Appellant swung a knife at Complainant and inflicted a deep wound on her left arm, which required stitches. Appellant's assault left scars on Complainant's head and arm. Thus, Appellant's aggravated assault conviction was supported by sufficient evidence. **See** 18 Pa.C.S.A. § 2702(a)(1).

To the extent Appellant points to relatively minor inconsistencies between parts of Complainant's statement to police (which did not concern the nature of the assault) and her in-court testimony, Appellant challenges the weight of the evidence. **See Commonwealth v. Price**, 616 A.2d 681, 683 (Pa.Super. 1992) (explaining sufficiency challenge asks whether evidence exists on record to support conviction, whereas argument that witness' account is not credible goes to weight). The jury, however, was free to believe all, part, or none of the evidence, including Complainant's testimony regarding the assault. **See Jones, supra**. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/17/2015</u>