J-A25041-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DAVID TYUS | : | |
| | : | |
| Appellant | : | No. 1084 WDA 2020 |

Appeal from the Judgment of Sentence Entered September 2, 2020
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0008758-2018

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DAVID TYUS | : | |
| | : | |
| Appellant | : | No. 1085 WDA 2020 |

Appeal from the Judgment of Sentence Entered September 2, 2020
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0012964-2018

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DAVID TYUS | : | |
| | : | |
| Appellant | : | No. 1086 WDA 2020 |

Appeal from the Judgment of Sentence Entered September 15, 2020
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0009788-2018

BEFORE:   KUNSELMAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED: FEBRUARY 8, 2022**

David Tyus appeals from the judgment of sentence entered following a consolidated jury trial in which he was found guilty of: rape; two counts of involuntary deviate sexual intercourse ("IDSI"); two counts of aggravated indecent assault; three counts of unlawful contact with a minor; two counts of indecent assault; two counts of sexual assault; and corruption of minors.[1] In total, Tyus was sentenced to forty-four years and two months to eighty-eight years and four months of incarceration, to be followed by five years of probation. On appeal, Tyus chiefly challenges the appropriateness of the trial court's joinder of his three cases, contending that the one case involving an older victim was wholly dissimilar from the other two. In addition, Tyus claims that there was insufficient evidence to find him guilty at two of his convictions. Lastly, Tyus raises a merger argument, averring that rape and one of his IDSI counts should have merged for sentencing purposes. While we affirm in all other respects, we agree that Tyus was sentenced illegally given that his rape and one IDSI conviction stemmed from the same criminal act and utilized the same statutory elements. Consequently, we are constrained to remand for resentencing purposes.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. § 3121(c); 18 Pa.C.S.A. § 3123(b); 18 Pa.C.S.A. § 3125(a)(7); 18 Pa.C.S.A. § 6318(a)(1); 18 Pa.C.S.A. § 3126(a)(7); 18 Pa.C.S.A. § 3124.1; and 18 Pa.C.S.A. § 6301(a)(1)(i), respectively. As will be more fully detailed *infra*, these aggregated convictions stem from charges derived from three separate victims.

In summary, Tyus's adoptive mother ran a daycare out of her house, with two of the three victims having been enrolled in this daycare service. Specifically, when juxtaposed against the timeline of Tyus's criminal activities, one victim, M.K., was between four and five years old, and the other, A.M., was eight years of age. As best as can be discerned from the record, M.K. relayed that she had been victimized in 2016, while A.M. stated that her mistreatment happened in 2017. However, both victims described Tyus touching them inappropriately.

As Tyus's adoptive mother left the daycare frequently and for long periods of time, Tyus would often be left to care for the daycare attendees, including the victims. During these moments of her absence, M.K. indicated that Tyus touched her rear and frontal private areas with his hand and mouth. In a similar vein, A.M. described that Tyus placed in hand inside of her vagina. Moreover, A.M. discussed another incident when Tyus placed his penis in her butt, albeit clarifying that A.M. did not think he put it in all the way. Both victims ultimately informed their mothers about what had happened, which led to forensic interviews being performed.

The third victim, A.S., was Tyus's high school classmate and seventeen years of age at all points relevant to this case. A.S. recounted that Tyus asked her to hang out, to which she eventually obliged by meeting him at a nearby library. The two then went to Tyus's adoptive mother's house so that Tyus could give her a tour. At some point, in the hallway outside of his bedroom, Tyus grabbed her and thereafter pushed her onto his bed. Concurrent with

her telling Tyus to get off of her, Tyus held her down and proceeded to remove her pants and underwear. Tyus then inserted his penis into her vagina, and, after this event was over, A.S. ran out of the house. A.S. would go on to report what had happened to a school employee.

Tyus's subsequent interaction with the police, identified as an interview, would yield a written statement wherein he admitted to touching and kissing at least some of the children at the daycare. These interactions stemmed from his periodic duty of looking after his adoptive mother's operation. However, Tyus disclaimed any of this touching and kissing as being sexual in nature. In that same statement, Tyus wrote that, with his adoptive mother being out of town, he had oral sex with A.S. While engaged in this sexual activity, which Tyus described as consensual, M.K. happened to observe the two of them.

Prior to trial, the Commonwealth filed a motion to join the cases involving M.K., A.M., and A.S. Tyus challenged the joinder of A.S. to the other two cases. Following a hearing, the court granted the Commonwealth's motion, allowing for all three cases to be tried at the same time.

At trial, Tyus maintained that the body of his written statement was false and that he only felt compelled to write its contents because he had been threatened with jailtime for a pending retail theft case. Instead, Tyus indicated that he had some level of daycare responsibilities while living with his adoptive mother and, too, acknowledged that he met up with A.S., which led to sexual activity between them. Nevertheless, Tyus unequivocally denied any of the accusations lodged against him, and in particular, Tyus highlighted that while

he would have games-based or other interactions with the daycare enrollees, there was never a situation where another adult would not have been present.

Following a multi-day jury trial, Tyus was found guilty on multiple counts in each case. At sentencing, which amounted to an aggregate forty-four years and two months to eighty-eight years and four months of incarceration followed by five years of probation, Tyus received multiple mandatory sentences as well as judicially determined ones.

Tyus filed a timely post-sentence motion, which was subsequently denied. Resultantly, notices of appeal were, too, timely filed. This Court *sua sponte* consolidated the appealed cases. Finally, the relevant parties have complied with their respective obligations under Pennsylvania Rule of Appellate Procedure 1925. As such, this appeal is ripe for review.

On appeal, Tyus presents three issues:

1. Did the trial court abuse its discretion in joining these three cases, where the prejudicial allegations involving the younger minors were substantially dissimilar from those relating to A.S.?

2. Did the Commonwealth present insufficient evidence that A.M. was "penetrated" to sustain convictions for rape and IDSI?

3. Should rape and IDSI have merged as flowing from a singular act?

*See* Appellant's Brief, at 8.

In his first issue, Tyus asserts that "[t]he allegations by A.S. referred to substantially different conduct from the remote, prior allegations regarding the much younger minors." *Id.*, at 19. Therefore, because there were no

"unique or distinct factors linking these cases," *id*., the jury improperly heard prejudicial propensity evidence. Accordingly, there was no basis to permit the joinder of A.S.'s case to the other two.

Preliminarily, we note that "[t]he general policy of the laws is to encourage joinder of offenses and consolidation of indictments when judicial economy can thereby be effected, especially when the result will be to avoid the expensive and time consuming duplication of evidence." *Commonwealth v. Johnson*, 236 A.3d 1141, 1150 (Pa. Super. 2020) (citation omitted). In addition, we emphasize that "[w]hether to join or sever offenses for trial is within the trial court's discretion and will not be reversed on appeal absent a manifest abuse thereof, or prejudice and clear injustice to the defendant." *Id*. (citation omitted).

Although there are two bases for the joint trying of offenses charged in separate indictments or informations, the one germane to this matter allows for joinder if "the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion[.]" Pa.R.Crim.P. 582(A)(1)(a). While "[e]vidence of a crime … is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," Pa.R.E. 404(b)(1), such evidence "may be admissible for another purposes, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E.

404(b)(2). Moreover, "evidence of other crimes may be admitted where such evidence is part of the history of the case and forms part of the natural development of the facts." ***Commonwealth v. Collins***, 703 A.2d 418, 423 (Pa. 1997); ***see also Commonwealth v. Dillon***, 925 A.2d 131, 137 (Pa. 2007) (describing this furnishment of the complete story of the events surrounding a crime as the *res gestae* exception). The admissibility of such evidence, however, is predicated on a showing that its probative value outweighs its potential for prejudice. ***See*** Pa.R.E. 404(b)(2).

As it was required to do so, the trial court found that evidence of each discrete offense, as it pertained to all three victims, would be admissible in a separate trial for the other crimes charged. The trial court indicated that:

> All three incidents took place in the same building, within the same time frame, and all involved acts of sexual degradation. In addition, [Tyus] made a written statement that M.K. walked in on him while he was performing oral sex on A.S. [Tyus] essentially asserted that his defense in the other cases was that M.K. saw this consensual activity and it gave her the impetus to allege that [Tyus] had done similar things to them. A.S. denied that she ever consented to sex with [Tyus], and that the home was empty when [Tyus] raped her.

Trial Court Opinion, 2/23/21, at 4-5. The trial court then went on to note that "jury confusion [was] unlikely in that the testimony as to each victim was easily distinguishable, the crimes were well-defined, and the crimes themselves were not unduly complicated or requiring advanced training to understand." ***Id***., at 5.

The gravamen of Tyus's argument is that, in contravention with the trial

- 7 -

court's finding, given the factual dissimilarities between A.S. and the other two victims, evidence of each of the offenses would not have been admissible in a separate trial for the other. In other words, the lack of "high correlation" between the crimes' details means that it was an abuse of discretion to permit joinder. Appellant's Brief, at 28. In response, the Commonwealth posits that evidence in each case was admissible on either *res gestae* or opportunity-based grounds. **See** Appellee's Brief, at 10.

Notwithstanding there being some level of distinctiveness between the facts underpinning A.S.'s case as compared to the events surrounding M.K. and A.M.[2], we are not convinced that the trial court abused its discretion in consolidating these cases. Although the trial court's rationale is not entirely clear nor is it evident precisely what was of record when the motion to join the cases was filed, we believe that evidence of the offenses committed against M.K. and A.M. could have been admitted in A.S.'s trial on the basis that it demonstrated, *inter alia*, opportunity. In addition, given the contents of Tyus's written statement and corresponding interview with police, which was known in advance of trial, evidence of the offenses committed against

_____

[2] For instance, Tyus illuminates that "there was no similarity in the age of each complainant to show that a specific demographic was being targeted." Appellant's Brief, at 26. Moreover, unlike with M.K. and A.M., Tyus did not serve a caretaking role in A.S.'s life. **See id**. Tyus also points to distinguishable aspects of the sexual acts he performed on the victims as well as the temporal gap between the offenses, happening months to over a year apart from one another. **See id**., at 27.

A.S. could have been admitted in M.K. and A.M.'s trials under the auspice of the *res gestae* exception.

The most salient evidentiary element related to M.K. and A.M.'s cases is, as the trial court found, the location where the crimes were committed: at Tyus's adoptive mother's home. Similarly, as the bridge between the two cases, A.S. alleged that she had been sexually assaulted in the exact same residence. It is self-evident that use of the private daycare property, especially at times when Tyus's adoptive mother was not present, was limited to only a handful of people, chiefly Tyus, himself.

While "the Commonwealth is required to show more than that the crimes are of the same class," ***Commonwealth v. Newman***, 598 A.2d 275, 278 (Pa. 1991), we are convinced that there was a high enough correlation "in the details of the crimes … such that proof that the defendant committed one makes it very unlikely that anyone else but the defendant committed the others." ***Id***. The seemingly unrestricted access to the building provided the clear opportunity for Tyus to engage in crimes of a sexual nature. Moreover, it can be deduced that, after committing the sexual crimes on M.K. and A.M. without repercussion, Tyus was free to plan other illicit sexual endeavors with impunity by utilizing the same recurrently unsupervised location. Other than stating that each of Tyus's crimes happened in different months, if not years, and involved somewhat distinct sexual acts, Tyus presents no compelling basis as to why his past use of his adoptive mother's property to perform these sex

crimes did not or could not establish a future opportunity or plan to continue to engage in subsequent unlawful activity. As such, it was not an abuse of discretion for the court to hold that evidence from the trials involving M.K. and A.M. could be admitted in the one where A.S. was the victim.

As to the admission of offense-based evidence from the A.S. case in the M.K. and A.M. cases, Tyus inherently tied his written admission of having engaged in sexual activities with A.S. in with his version of events as it pertained to M.K. and A.M. *See Commonwealth v. Hairston*, 84 A.3d 657, 665 (Pa. 2014) (allowing for the admission of evidence of other crimes or bad acts to tell "the complete story") (citation omitted).

As read into the record at trial, Tyus's written statement declared:

> I, David Tyus, swear that this is the whole truth. I've been staying in a camper since September 2017 in the back of Ms. Victoria's house. I occasionally would watch Ms. Victoria's daycare kids with the I'm sorry, I can't read -- it looks like vision, but I'm unsure, of my little sister Ebony or my grandmother, Joe Ann Tyus, in the house.
>
> I hereby swear that I never let the girls touch my body parts. Yes, gave them a couple kisses and was caught with another girl in the house by the name of [A.S.] having oral sex. I never kissed or had oral sex with the two girls who reported this report. I did occasionally give them kisses on their head and neck and mouth and would pick them up, but I never touched their actual skin part of their body parts. Yes, my hand would touch them -- or touch their butt picking them up or when they would sit on my lap during a story, but there was no dick going into the vagina, no eating or licking of the vagina involved.
>
> Also, like I said before, there was this one time I was caught with a girl from my school having oral sex. The girl's name was [A.S.]. She was 17, and I was 18. My mom was out of town in Ohio, and my little sister Ebony was at her friend's house. I had

[A.S.] come in the house and had oral sex with her. [M.K.] did see it from coming upstairs to use the bathroom. I will admit to that. But as I said before, there was no oral sex performed between me and these daycare girls. The only touching that happened was me kissing them. It probably happened six -- or five times, it's 5 with X afterwards, and the time that I would pick them up or let them sit on my lap. This is the only time I would touch their butt.

N.T., 3/12/20, at 289-90. While Tyus does not proclaim any impropriety around his sexual encounter with A.S., him admitting to this interaction implicated at least one of the elements of the charged sexual crimes as it related to this victim. Moreover, Tyus explicitly mentions M.K. in his statement (as well as making an implicit reference to A.M. through use of the word "girls"), which, given M.K.'s presence during the events as they transpired with A.S., serves to establish a relatively tight temporal time frame between the crimes. The statement, too, further develops the narrative that he had unfettered and unsupervised access to use of his adoptive mother's house in addition to having continued access to the daycare attendees.

Tyus suggests that review of the trial court's decision on the Commonwealth's joinder motion is limited "to the exercise of discretion at the time of the decision" given that "pretrial motions are decided based on facts the court had available to it at that early stage in proceedings." Appellant's Reply Brief, at 2. At the time when it was filed, the Commonwealth's motion asserted that A.S.'s sexual assault occurred "during the same time period" as the sexual assaults that had occurred on M.K. and A.M. Motion for Joinder, 10/28/19, at 2-3 (unpaginated). The motion then goes on to state that "[i]n

a statement given by [Tyus] in regards to the charges involving [M.K.] and [A.M.], [Tyus] makes mention of sexual contact with [A.S.]." *Id*., at 3 (unpaginated). As would later be uncovered at trial, Tyus "attempted to use [A.S.'s] name to explain why there were previous accusations [by M.K. and A.M.] against him." N.T., 3/12/20, at 274, 293 (illuminating further that Tyus invoked A.S.'s name "as an alibi to why the other children were making the statements that they were. To … say that 'This is why they're saying this, because they witnessed me doing this with this other girl in the home.'").

Even if we were to exclusively look at the motion to join the cases together with the benefit of the record solely as it existed at that point, the Commonwealth averred that Tyus's statement to police described Tyus's sexual contact with A.S. at the same place and during the same overarching time frame as the other two daycare attendees who were, too, asserting that they had been sexually assaulted. Given Tyus's evidentiary admission that he had engaged in sexual activities with A.S. in tandem with: (1) M.K. having seen this interaction between him and A.S.; (2) Tyus's acknowledgement of having unsupervised access to his adoptive mother's house while simultaneously having at least one daycare attendee present; and (3) his unequivocal, yet relevant, denial of performing the same or similar sexual acts on M.K. and A.M., there is no doubt that evidence of A.S.'s case was relevant for purposes other than to show bad character or criminal propensity.

The timeline of events demonstrates the interconnectivity between the

crimes committed on A.S. and the crimes committed on M.K. and A.M. Tyus, in an unsolicited manner, disclosed information about having engaged in sexual acts with A.S. in an interview that was exclusively about his involvement with the daycare attendees. Clearly, that disclosure, given that it admitted to sexual activity but also implicated his involvement with M.K. and A.M., became so "clearly and inextricably mixed up with the history of the guilty act itself [i.e., the crimes committed on M.K. and A.M.] as to form part of one chain of relevant circumstances, and so could not be excluded on the presentation of the case before the jury without the evidence being rendered thereby unintelligible." ***Commonwealth v. Knoble***, 188 A.3d 1199, 1205 (Pa. Super. 2018) (citation omitted).

In ***Knoble***, this Court affirmed a trial court, which found, in part, that "denying the Commonwealth the opportunity to present the overall picture and natural sequence of events by trying these offenses separately would confuse and mislead the jury." ***Id***. (citation omitted). The interrelatedness of Tyus's crimes, sexual assaults performed on underaged females in the same private location and in the presence of no other adult, as well as Tyus's own narrative inherently tethering those crimes together by way of his written statement allowed for the court to find that such acts were part of one overarching sequence of events. Accordingly, we are constrained to conclude that, under the principle of *res gestae*, evidence of his crime committed on A.S. would have been admissible in the trials for the other offenses

- 13 -

perpetrated on M.K. and A.M. to fully understand this case's natural development. *See Commonwealth v. Brown*, 53 A.3d 320, 332 (Pa. Super. 2012) (delineating, in the converse, that bad acts "so far removed from the charged crimes" are not considered "as a natural part of the history, chain, or sequence of events").

Lastly, having reviewed the record, we are convinced that, given the distinct differences between the M.K./A.M. set of victims and A.S., the evidence in all three cases was clearly distinguishable and capable of separation by the jury. In addition, we see no basis to conclude that any prejudice suffered by Tyus outweighed the benefits realized through consolidation. Therefore, we conclude that there has not been an abuse of discretion in granting the Commonwealth's motion, and Tyus is entitled to no relief on this issue.

In his second issue, Tyus challenges the sufficiency of evidence used to convict him of rape and IDSI as it pertained to the actions he performed on A.M. Distilled down, Tyus claims that A.M.'s testimony indicating that he did not put his penis in all the way provided "no basis to convict him for penetration of the witness's anus." Appellant's Brief, at 30.

Per statute, rape, as relevant to this case, is defined as "sexual intercourse with a complainant who is less than 13 years of age." 18 Pa.C.S.A. § 3121(c). Sexual intercourse is defined, in addition to its ordinary meaning, as "intercourse per os or per anus, with some penetration however slight[.]"

18 Pa.C.S.A. § 3101.

IDSI is identified as "deviate sexual intercourse with a complainant who is less than 13 years of age." 18 Pa.C.S.A. § 3123(b). Correspondingly, deviate sexual intercourse is described as sexual intercourse "per os or per anus between human beings." 18 Pa.C.S.A. § 3101 (cross-referencing sexual intercourse, which, as stated above, requires "some penetration however slight").

While Tyus concedes that penile penetration of another's anus is sufficient to convict him of both rape and IDSI, he contends that A.M.'s testimony about the extent to which Tyus put his penis into her butt was "not sufficient to establish actual penetration of the anus." Appellant's Brief, at 32. In elaborating further, [t]here was no clarification at trial as to whether A.M.'s use of the term 'butt' included her anus or if it just meant the exterior region." *Id*. To Tyus, the penis not going in "all of the way" indicates no actual penetration. *Id*.

A challenge to the sufficiency of the evidence requires consideration of our well-established standard of review:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the factfinder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and

inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Ventura*, 975 A.2d 1128, 1142 (Pa. Super. 2009) (cleaned up). Pertinent to this case, "a sufficiency challenge asks only whether evidence exists on the record that, if believed, would support a conviction for rape. We may not assess the credibility or veracity of the evidence." *Commonwealth v. Price*, 616 A.2d 681, 683 (Pa. Super. 1992).

At trial, A.M. first relayed that she felt Tyus's penis "on [her] butt." N.T., 3/9/20, at 132 (making this pronouncement after previously indicating that Tyus took off her pants and underpants all the way off and bent her over). Then, she stated that "he was trying to put [his penis] in." *Id*. After that, she recalled, from memory, that he was able to put his penis in her butt. *See id*. Later, however, A.M. communicated that she didn't think "he put it in all of the way." *Id*., at 147.

Purely looking at the language of A.M.'s testimony, her indication that Tyus put his penis *in* her butt satisfies the statutory "penetration, however slight" requirement present in both the rape and IDSI statutes. A.M.'s testimony did not, in fact, indicate that Tyus's penis was simply near or around her butt or that somehow his penis grazed her butt. "In" is clearly operative

language. While A.M. later indicated that Tyus's penis was not placed "all the way" into her butt, such a statement does not contradict the notion that penetration, however slight, actually occurred. As the Commonwealth writes, in conjunction with the language of the statutes, "[t]here is no requirement that the penetrating body part be put in 'all of the way.'" Appellee's Brief, at 34. We agree with the Commonwealth's assertion that, other than the "however slight" clause, there is no further gradation or qualification present under the relevant statutes. Simply put, the act of penetration does not require any sort of "completeness" to it and can be found in the most minimal of penetrative circumstances.

To the extent Tyus asks this Court to reevaluate or reweigh the credibility of A.M.'s testimony, acting upon such a request is not within this Court's purview. Instead, the jury is the sole fact-finder, and it is free to believe all, part, or none of the evidence it is presented and resolve any inconsistencies it observes.

Because A.M. testified that Tyus placed his penis into her butt, her testimony necessarily established the statutory element of penetration. Accordingly, Tyus's claim fails.

In his final issue, Tyus contends that his convictions for rape and IDSI must merge as they both arise from the same act. In response, the Commonwealth agrees with Tyus and indicates that "this case must be remanded for resentencing[.]" Appellee's Brief, at 36.

- 17 -

The issue of merger raises a challenge to the legality of a sentence. ***See Commonwealth v. Tighe***, 184 A.3d 560, 584 (Pa. Super. 2018). Even though Tyus did not raise this issue with the lower court, such a challenge is not waivable. ***See Commonwealth v. Robinson***, 931 A.2d 15, 24 (Pa. Super. 2007).

Under Pennsylvania law, if two offenses "arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense," 42 Pa.C.S.A. § 9765, then they must merge for sentencing purposes. As outlined, *supra*, rape and IDSI both criminalize oral and anal intercourse with a complainant under the age of thirteen. ***See*** 18 Pa.C.S.A. § 3121(c); 18 Pa.C.S.A. § 3123(b).

Here, Tyus's rape and IDSI crimes as it pertained to A.M. relied upon the exact same activity: anal intercourse. Although its holding was in the context of oral sex (which is statutorily treated the same as anal sex in this domain), ***Commonwealth v. Brown*** established, unequivocally, that "the offenses of rape of a child and IDSI with a child are identical[.]" 159 A.3d 531, 534 (Pa. Super. 2017).

The Commonwealth ascertained that "the only incident which pertains to the instant claim is the one which occurred in the basement of the daycare and involved anal intercourse." Appellee's Brief, at 40 (stating further that Tyus only assaulted her anally on this one occasion). As both convictions are predicated on the exact same activity, resulted in consecutive sentences, and

are reliant on, in this situation, identical statutory elements, Tyus's rape and IDSI convictions at CC 2018-12964, must be, therefore, merged for sentencing purposes. **See Tighe**, 184 A.3d at 585 ("Since the trial court imposed a consecutive sentence on the charge of indecent assault, our finding disrupts the sentencing scheme and requires that we vacate the judgment of sentence and remand for sentencing.")

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  2/8/2022